UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
**PAMELA D. GILLESPIE**,

                Plaintiff,

       – against –

**COMMISSIONER OF SOCIAL SECURITY**,

                Defendant.
---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

1:19-CV-02907 (AMD)

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff seeks review of the Social Security Commissioner's decision that she is not disabled for the purpose of receiving benefits under Title II of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

       On March 15, 2016, the plaintiff applied for disability insurance benefits, alleging disability because of asthma, heart and cholesterol problems, diabetes, high blood pressure and a knee injury, with an onset date of October 7, 2015. (Tr. 102, 162, 187.) The plaintiff's claim was denied on May 27, 2016. (Tr. 103.)

       Administrative Law Judge Laura Olszewski held a hearing on September 28, 2017, at which a vocational expert and the plaintiff, represented by a lawyer, testified. (Tr. 61-90.) In an August 23, 2018 decision, the ALJ denied the plaintiff's disability claim. (Tr. 10-21.) She found that the plaintiff had the following severe impairments: "osteoarthritis, lower extremity peripheral neuropathy, asthma, sleep apnea, obesity, ischemic heart disease, diabetes mellitus,

high blood pressure, [and] hyperlipidemia,"[1] but that none of these impairments met or equaled the applicable listings.[2] (Tr. 13-14.) The ALJ concluded that the plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R § 404.1567(a) with limitations:

> [T]hey can lift and or carry 10 lbs occasionally. They can sit for six hours in an eight-hour workday, stand and or walk for two hours in an eight hour workday. The individual can occasionally climb ramps and stairs but should never climb ladders and scaffolds. They can occasionally balance and stoop. They should never kneel, crouch and crawl. The individual should avoid respiratory irritants such as dust odors, fumes, gases and extreme hot and cold temperatures. The individual needs a cane to ambulate.

(Tr. 15.) Relying on the testimony of the vocational expert, the ALJ found that although the plaintiff was unable to perform her past relevant work, she was capable of performing other jobs in the national economy. (Tr. 19-21.)

The Appeals Council denied the plaintiff's request for review on April 29, 2019. (Tr. 1-3.) The plaintiff filed this action on May 16, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 10, 15).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial

---

[1] She also determined that the plaintiff had non-severe mental impairments of adjustment disorder and agoraphobia. (Tr. 13.) The plaintiff's attorney informed the ALJ at the hearing that the plaintiff was not pursuing any allegations of severe mental health impairments. (Tr. 81.)

[2] The plaintiff testified at the hearing that she had recently suffered a hairline fracture in her leg, but the ALJ did not consider this in determining if the plaintiff's impairments met or equaled the applicable listings—or in the RFC determination—because there was no support in the medical record. (Tr. 14-16.) The plaintiff does not challenge the ALJ's refusal to consider additional evidence about the fracture.

2

evidence in the record to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal citations and quotation marks omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

The plaintiff claims that the ALJ's decision was not supported by substantial evidence. Specifically, she faults the ALJ for assigning two consultative examiners' opinions "great weight;" the plaintiff says that the examiners lacked the necessary expertise to assess her "neuromuscular/musculoskeletal" impairments, and that each doctor conducted only a single examination and did not evaluate the plaintiff's subsequent test results or take into account the extent to which the plaintiff's abilities changed over time. The plaintiff also argues that the ALJ did not fulfill her duty to develop the record. (ECF No. 10-1 at 9-12.) The defendant responds that the ALJ's decision was supported by substantial evidence. (ECF No. 15-1.)

### I. RFC Determination

ALJ Olszewski found that the plaintiff had the residual functional capacity to perform sedentary work with limitations. (Tr. 15.) The ALJ gave "great weight" to the opinions of consultative examiners Dr. John Fkiaras and Dr. Vinod Thukral, both of whom examined the

3

plaintiff on April 22, 2016 at the request of the Social Security Administration.[3]  (Tr. 17-18.)  Dr. Fkiaras, a family medicine specialist, found that the plaintiff had "moderate limitation[s] walking long distances[,] . . . climbing stairs[,] . . . standing long periods[,] . . . lifting, carrying, pushing and pulling."  (Tr. 360.)  Dr. Thukral, an internal medicine specialist, determined that the plaintiff "ha[d] no limitation for sitting, but ha[d] mild limitations for standing (for a long time), bending, pushing, pulling, lifting, carrying, and any other such related activities due to . . . bilateral knee pain."  (Tr. 367-68.)  Both Dr. Fkiaras and Dr. Thukral found no evidence of joint effusion or muscular atrophy in the legs.  (Tr. 359-60, 366-67.)

According to the plaintiff, neither Dr. Fkiaras or Dr. Thukral had the necessary expertise to make an accurate assessment of her abilities; she says that an orthopedist, neurologist or physiatrist should have examined her because of her "neuromuscular/musculoskeletal" impairments.  (ECF No. 10-1 at 10.)  However, a doctor's specialization is only one of several factors that an ALJ must consider when determining the weight that an expert's medical opinion merits.  *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").  For this reason, the ALJ was not obligated to reject the medical opinions of Dr. Fkiaras and Dr. Thukral simply because they were not neuromuscular or musculoskeletal specialists.  *See, e.g.*, *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (summary order) ("The [fact] that that Dr. Wassef's specialty is pediatrics . . .

---

[3] ALJ Olszewski also accorded great weight to the medical opinions of Dr. Kennedy-Walsh and Dr. Akerman.  (Tr. 16-17.)  Dr. Kennedy-Walsh, a state agency medical consultant and psychiatrist, conducted an RFC assessment on May 24, 2016 in support of the Commissioner's initial disability determination.  (Tr. 99-101.)  He found that the plaintiff had mild to moderate limitations and determined that she had the residual functional capacity to perform sedentary work.  (*Id.*)  Dr. Akerman, the plaintiff's treating physician for her asthma, opined that the plaintiff could not work at a job in which she would be exposed to strong chemical odors.  (Tr. 242.)  The plaintiff does not challenge the weight given to these opinions.

[does] not preclude the ALJ from assigning Dr. Wassef's opinion significant weight."); *Langlois v. Colvin*, No. 13-CV-262, 2014 WL 7178403, at *8 (D. Vt. Dec. 16, 2014) ("[T]he physician's specialty is but one factor among many which should be considered[,]" and the ALJ's conclusion that a doctor had "little expertise to accurately assess functional limitations from mental impairments" because he was not a psychologist was not a "good reason" to assign little weight to his opinion).

The plaintiff also contends that a meaningful assessment of her disability requires a "longitudinal medical picture" because of the variability of musculoskeletal impairments over time, and that a single examination was not enough. (ECF No. 10-1 at 10-11.) The length of the treatment relationship and frequency of examination is one of several factors that an ALJ is to consider in weighing medical opinions. *See* 20 C.F.R. § 404.1527(c)(2)(i). An ALJ may rely on a consultative examiner's medical opinion, even if based on a single examination, if the opinion is consistent with the objective medical evidence. *See Wright*, 687 F. App'x at 48. Nevertheless, given the variability of musculoskeletal impairments over time, the regulations recognize that "a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ determined that the consultative examiners' opinions were "consistent with the medical evidence of record, the claimants' admitted activities of daily living and the residual functional capacity." (Tr. 17-18.) However, the ALJ did not explain why she reached this conclusion, and the record contradicts it. Although Dr. Fkiaras and Dr. Thukral found no evidence of joint effusion or muscular atrophy in the plaintiff's legs (Tr. 359-60, 366-67), neurologist Hannah Walters' progress notes, made several months after the consultative examinations, refer to an MRI that revealed "large joint effusion" and "atrophy" of large muscle

5

groups (Tr. 543), and an x-ray that showed osteoarthritic changes, "atrophy of muscles" and meniscal tears (Tr. 540).[4] Dr. Walters also cited the plaintiff's four year history of difficulty walking, a condition that was "[p]rogressively worsening." (Tr. 540.) For that reason, Dr. Walters ordered an EMG and nerve conduction study (Tr. 544), which Dr. Zelefsky analyzed. Dr. Zelefsky found that the plaintiff had "demyelinating peripheral neuropathy of the lower extremities," and evidence of "severe bilateral L3-4-5-S1 lumbosacral [r]adiculopathy."[5] (Tr. 534.) These records, to which the consultative examiners did not have access, show damage to the plaintiff's legs and suggest that her condition was deteriorating. The ALJ did not mention the x-ray or MRI, and did not explain the extent to which this additional medical evidence— which included muscular atrophy and joint effusion—affected her RFC determination.[6] Nor did the ALJ discuss the inconsistency between the consultative examiners' opinions and the subsequent test results.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order); *see also Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) ("[B]y plaintiff's hearing date, the disability examiner's opinion that Jones could perform light work was 1.5 years stale, and did not account for her deteriorating condition."); *Girolamo v. Colvin*, No. 13-CV-06309, 2014 WL 2207993, at *8 (W.D.N,Y. May 28, 2014) (finding remand appropriate where

---

[4] It is not clear which leg was x-rayed. (Tr. 540.)
[5] The ALJ referred to the EMG and nerve conduction study in assessing the plaintiff's RFC (Tr. 16), but it is not clear that she considered these results in determining if the medical opinions of the consultative examiners were consistent with the medical evidence in the record.
[6] The plaintiff used a walker in 2017, which suggests that her condition was deteriorating. (*See* Tr. 74, 579, 585, 605, 613.)

physician's medical opinion was based on the plaintiff's 2010 medical record and therefore did not account for her subsequent surgery and related diagnostic testing in 2011); *Kirkland v. Astrue*, No. 06-CV-4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) ("Remand [is]… appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would plainly help to assure the proper disposition of [a] claim.").

In light of the significant medical evidence that emerged after Drs. Fkiaras and Thukral examined the plaintiff, their opinions do not constitute substantial evidence to support the ALJ's RFC determination. Remand is appropriate to allow the ALJ to evaluate the plaintiff's RFC with the benefit of a complete record. The ALJ should also consider the extent to which the additional medical evidence affects her decision about the plaintiff's subjective description of her symptoms.[7]

## II. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), and an "ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). This affirmative duty exists even when the plaintiff is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). An ALJ's failure to adequately develop the record is grounds for remand. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999).

The record before the ALJ did not include a medical opinion from a treating physician or any other medical professional that described the extent of the plaintiff's condition or explained the significance of tests conducted after the consultative exams.

---

[7] The ALJ found that the plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record. (Tr. 18-19.)

7

"ALJs have a general obligation to obtain the opinion of treating physicians, not just their reports and underlying data." *Cira v. Comm'r of Soc. Sec.*, No. 15-CV-6704, 2017 WL 4339480, at *9 (E.D.N.Y. Sept. 29, 2017). It is not enough for an ALJ to rely on charts and lab tests from treating physicians—it is the "*opinion* [of the treating physician] as to the existence and severity of a disability" that is to be sought. *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991). An ALJ's failure to obtain a medical source statement from a plaintiff's treating physician does not always require remand, "particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (finding that although the record lacked a formal opinion of the plaintiff's RFC by the treating physician, remand was inappropriate because the extensive medical record contained an assessment of the plaintiff's limitations by the treating physician). Nevertheless, the ALJ cannot "arbitrarily substitute h[er] own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)) (internal quotation marks omitted).

As reflected in the notes of Dr. Hannah Walters, the plaintiff's neurologist, and in the results of additional tests, there was evidence that contradicted the consultative examiners' opinions upon which the ALJ relied to determine the plaintiff's RFC. It does not appear that the ALJ sought a medical source statement from Dr. Walters, whose notes refer to the plaintiff's musculoskeletal impairments and deteriorating condition, but do not shed any light on how the plaintiffs impairments affected her functional capacity.[8] The ALJ should have sought Dr. Walters' opinion about the plaintiff's functional and vocational limitations, or otherwise filled

---

[8] The record includes evidence that Dr. Walters was treating the plaintiff; her records were part of the administrative record, and the plaintiff testified that Dr. Walters was her "main treating doctor." (Tr. 80-81.)

8

this gap. *See Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (The ALJ's duty to develop the record includes "assembling the claimant's complete medical history" and "recontacting the claimant's treating physician if the information received from the treating physician . . . is inadequate to determine whether the claimant is disabled.") (citations omitted); 20 C.F.R. § 404.1520b(b).

Moreover, the record should include a medical opinion about the practical effects of the plaintiff's musculoskeletal impairments—evidenced by the MRI, x-ray and EMG—on the plaintiff's vocational abilities.[9] *See Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (summary order) (finding remand appropriate where the ALJ did not request a medical opinion from the plaintiff's treating physician and existing medical records did not address the plaintiff's vocational abilities); *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").

### III. Step Five Analysis

The plaintiff claims that the ALJ did not "meet her burden" of "adduc[ing] medical and vocational evidence proving that the plaintiff is capable of performing other jobs that exist in significant numbers in the national economy" at step five of her analysis. (ECF No. 10-1 at 9-10.)

---

[9] The ALJ appears to have relied on the EMG and nerve conduction study to conclude that the plaintiff's lower extremity peripheral neuropathy was a severe impairment (Tr. 13, 534), but she did not explain whether she considered the peripheral neuropathy as part of her RFC assessment, although she did note the EMG. *See Doobay v. Comm'r of Soc. Sec.*, No. 19-CV-00070 (AMD), 2020 WL 1031377, at *2 (E.D.N.Y. Mar. 3, 2020) ("The ALJ's failure to explain whether or how the plaintiff's heart condition affected the RFC determination is inconsistent with his prior finding that the condition is severe."); *Copeland v. Comm'r of Soc. Sec.*, No. 05-CV-3684, 2006 WL 2095722, at *4 (E.D.N.Y. July 27, 2006) (finding that the ALJ's list of the plaintiff's "severe impairments at step two is inconsistent with his later conclusion that her seizure disorder was 'the only impairment that the claimant has that substantially diminishes her ability to work.'") (quoting the record).

9

"[T]here is only a limited burden shift to the Commissioner at step five. . . . [T]he Commissioner need only show that there is work in the national economy that the clamant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see* 20 C.F.R. § 404.1560(c)(2).

Although the plaintiff misstates the Commissioner's burden, I agree that the vocational expert's opinions were predicated on findings that were not supported by substantial evidence. "A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant." *Baker v. Berryhill*, No. 17-CV-8433, 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019); *see also Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (finding that the Commissioner may rely on a vocational expert's opinions concerning a hypothetical claimant so long as the ALJ's hypothetical mirrors the plaintiff's RFC and is based on substantial evidence). On remand, the ALJ should reassess the plaintiff's residual functional capacity with the benefit of the expanded record. If the ALJ finds that the plaintiff's limitations are different from those of the hypothetical claimant upon whom the vocational expert made her conclusion, the ALJ should ask the vocational expert to re-evaluate the plaintiff's vocational options.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion for judgment on the pleadings is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

        s/Ann M. Donnelly
        _____
        ANN M. DONNELLY
        United States District Judge

Dated: Brooklyn, New York
       July 31, 2020